121 Cal.Rptr.2d 828 (2002)
99 Cal.App.4th 1292
The PEOPLE, Plaintiff and Respondent,
v.
Nathan K. FULTON, Defendant and Appellant.
No. D036550.
Court of Appeal, Fourth District, Division One.
July 5, 2002.
Rehearing Granted August 1, 2002.
*829 Nathan K. Fulton, in pro. per.; Johnson & Edwards, Law Offices of John E. Edwards and John E. Edwards, under appointment by the Court of Appeal under the Appellate Defenders, Inc., Independent Case System, San Diego, for Defendant and Appellant. [Appointed.].
Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster, Laura Whitcomb Halgren and Gary W. Brozio, Deputy Attorneys General, for Plaintiff and Respondent.
HALLER, J.
Nathan Fulton pled guilty to driving while under the influence of alcohol, causing injury. The trial court granted Fulton probation and ordered him to pay the victim restitution, including $25,000 in attorney fees the victim incurred prosecuting a personal injury action against Fulton for economic and noneconomic damages sustained as a result of Fulton's criminal conduct. (Pen.Code, § 1202.4.)[1]
Fulton's sole appellate challenge concerns the restitution award. Fulton contends the amount of the attorney fees awarded was improper because a portion of that award reflected attorney services incurred to recover noneconomic damages. While we agree section 1202.4, subdivision (f)(3), allows restitution only for that portion of attorney fees attributable to the victim's recovery of economic damages, we conclude the record supports that the $25,000 restitution award reflected attorney fees incurred to recover the victim's economic damages and that this amount was reasonable. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
In January 1999, Fulton was driving his car at a high rate of speed when he *830 crossed over the center double yellow line, causing a head-on collision with a vehicle driven by Gary Overton. Fulton's blood-alcohol level was measured at 0.16 percent. Overton suffered injuries to his shoulder requiring surgery, physical therapy and possible future surgery; a severe laceration requiring 65 stitches to his ear; a large laceration to his head; and complaints of pain to his head, nose and legs. Overton's injuries caused him to miss several weeks of work, resulting in lost wages. His vehicle was "totaled" in the crash, resulting in property damage and expenses for a rental vehicle.
Shortly after the accident, Overton retained the services of attorney Barbara Savaglio to pursue legal action against Fulton. Overton agreed to a 25 percent contingent fee arrangement. Following unsuccessful negotiations with Fulton's insurer, Wawanesa Mutual Insurance, Savaglio filed a personal injury action against Fulton. The case settled in May 2000 for $100,000, Fulton's policy limits.
At the time of the settlement, Overton's losses for past medical expenses were approximately $8,916.35, and the costs for future shoulder surgery were estimated at $6,486.73. His past lost wages were $3,564. Depending on Overton's post surgery recovery, it was anticipated he would be off work an additional two weeks to eight weeks to six months. At a monthly salary of $3,960, Overton's future lost wages ranged between $1,828 and $23,760. The property damage for his 1977 Ford was $5,103.31 (the costs for the vehicle Overton rented do not appear in the record). Assuming Overton underwent surgery and returned to work within two weeks, his total past and future economic damages were approximately $25,898. For each additional week Overton was off work, the damages increased by $914.
Before Overton filed the civil lawsuit against Fulton, Wawanesa had agreed to pay Overton his property damages, but disputed the value of his other claimed damages. Wawanesa was particularly skeptical of Overton's claim that his shoulder injury would require further surgery. Early in the negotiations, Wawanesa offered $70,000 to settle the matter, but Overton rejected the offer. Unable to satisfy Wawanesa of the extent and nature of Overton's physical injuries, Savaglio filed the lawsuit against Fulton. Following initial discovery, the production of additional medical records and a defense independent medical examination confirming the need for future shoulder surgery, Savaglio successfully settled the case at the $100,000 policy limits. In doing so, Savaglio spent in excess of 135 hours of her time, and over 50 hours of her legal assistant's time. Under the contingency fee agreement, Savaglio received 25 percent of the $100,000 settlement ($25,000) and litigation costs.
At the restitution hearing following sentencing, Fulton argued that the restitution for attorney fees should be limited to the portion of the contingency fee attributable solely to recovering Overton's economic damages which Fulton claimed were $12,500.[2] According to Fulton, the 25 percent contingency fee should be applied *831 solely to the economic damages, not to the total recovery of $100,000, which reflected both economic and noneconomic damages. In the alternative, Fulton argued the $25,000 fee was unreasonable.
At the outset of the final restitution hearing, the trial court stated it had tentatively concluded that the entire attorney fee was recoverable, regardless of how much of the attorney services were incurred to obtain economic, as opposed to noneconomic, damages. The court later stated it "remain[ed] unconvinced that there is any workable ... practical formula that would allow a court to take attorneys fees and divide them up between economic and noneconomic damages. [¶] I'm already and absolutely convinced you can't do it by the ratio of the recovery, and I also find it entirely unworkable that you would do it by a full-blown factual analysis of the attorney time spent. [1] [Based on] the language of the statute, I remain convinced that the entire attorney fee contingency or otherwise is an economic cost that is attributable-that can be awarded by a judge in a criminal case."
The trial court thus found the entire attorney fees qualified as an economic loss within the meaning of section 1202.4, subdivision (f)(3), and that the 25 percent contingency fee was reasonable. Accordingly, the trial court ordered Fulton to pay restitution of $25,000 for attorney fees to Overton.

DISCUSSION

I. Recoverable Attorney Fees Under Section 1202.k

Fulton contends the court erred in awarding $25,000 in restitution reflecting Overton's attorney fees because a portion of those fees was incurred to recover Overton's noneconomic damages.
Section 1202.4 governs a trial court's authority to order a criminal defendant to pay restitution directly to a crime victim. Section 1202.4, subdivision (a)(1) states: "[i]t is the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from any defendant convicted of that crime." (Italics added.) The statute's implementing subdivision, subdivision (f), states the court "shall require that the defendant make restitution to the victim ... in an amount established by court order ...," and subdivision (f)(3) provides that the restitution "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as a result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] ... [¶] (H) Actual and reasonable attorney's fees and other costs of collection accrued by a private entity on behalf of the victim."[3] (§ 1202.4, subd. (f)(3), italics added.)
*832 Fulton does not dispute that, under section 1202.4, subdivision (f)(3)(H), reasonable attorney fees constitute an economic loss recoverable as restitution. But Fulton contends that attorney fees are recoverable as restitution only to the extent they are incurred to collect a recoverable restitution item, such as medical expenses and lost wages, and not to collect a nonrecoverable item such as pain and suffering noneconomic damages. The Attorney General counters that "all attorneys fees are `economic losses' and recoverable as restitution so long as the fees are reasonable." This issue appears to be one of first impression. (See People v. Pinedo (1998) 60 Cal.App.4th 1403, 1406, 71 Cal. Rptr.2d 151.)
In resolving the parties' different views of the statute, our task is to interpret the code section to effectuate the Legislature's intent. (People v. Allen (2001) 88 Cal. App.4th 986, 990-991, 106 Cal.Rptr.2d 253.) In so doing, we look first to the words of the statute, giving the language its usual, ordinary meaning. (People v. Birkett (1999) 21 Cal.4th 226, 231, 87 Cal. Rptr.2d 205, 980 P.2d 912.) "[W]e consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." (Curie v. Superior Court (2001) 24 Cal.4th 1057, 1063, 103 Cal. Rptr.2d 751, 16 P.3d 166.) If the plain language of the statute is uncertain, we must give the words their reasonable and common sense construction in accordance with the apparent purpose and intention of the lawmakers. Such construction must be practical rather than technical and will lead to wise policy rather than to mischief or absurdity. (Wise v. Pacific Gas & Electric Co. (1999) 77 Cal.App.4th 287, 299, 91 Cal.Rptr.2d 479.) Further, "consideration should be given to the consequences that will flow from a particular interpretation." (Dyna-Med, Inc. v. Fair Employment & Housing Com. (1987) 43 Cal.3d 1379, 1387, 241 Cal.Rptr. 67, 743 P.2d 1323.)
Section 1202.4, subdivision (f)(3)(H) identifies attorney fees as an economic loss recoverable as direct restitution. The fees are expressly limited to those that are "[a]ctual and reasonable" and those incurred in the recovery of damages the victim suffered as a result of the defendant's criminal conduct. This subdivision further includes the phrase "and other costs of collection accrued by a private entity on behalf of the victim." (§ 1202.4, *833 subd. (f)(3)(H).) Viewed in context, the reference to "attorney's fees and other costs of collection" logically suggests the Legislature was viewing attorney fees as a cost of collection and was intending to permit the recovery of attorney fees that were incurred for "collection" purposes. Although the subdivision does not expressly identify the object of that collection, it is only reasonable to infer it is the collection of restitution permitted under the statute.
This interpretation is consistent with the meaning and purpose of the entire statutory scheme. The Legislature mandated that trial courts order restitution in an amount that will "fully reimburse" the victim for economic losses, such as property damage and medical expenses, caused by the defendant's criminal conduct. (§ 1202.4, subd. (f)(3).) However, a victim who suffers these economic losses would not be fully reimbursed if he or she were required to bear the expense of an attorney to recover for that damage. Recognizing this, the Legislature provided for the victim's recovery of reasonable attorney fees incurred to collect economic damages. But the Legislature additionally made an express policy determination that noneconomic damages are not recoverable as restitution and therefore a victim will not be reimbursed for those losses.[4] From this rule, it rationally follows that the Legislature did not perceive a need for a victim to recover attorney fees incurred to collect noneconomic damages in order for the victim to fully recover restitution under the statute. A contrary conclusion would mean that a victim who suffers only noneconomic loss would be entitled to recover as restitution all attorney fees incurred to recover that loss, but the same victim could not obtain restitution for any of the underlying noneconomic damages. Likewise, under the Attorney General's interpretation of the restitution statute, a victim who incurs only a small amount of economic damage but sustains substantial noneconomic damages would be potentially entitled to a large attorney fee award that has no meaningful relationship to the restitution for the underlying damages. We decline to interpret the statute in such an incongruous fashion.
Accordingly, we hold that under the plain meaning and express purpose of section 1202.4, subdivision (f)(3)(H), actual and reasonable attorney fees incurred by a victim as a result of the defendant's criminal conduct are recoverable as restitution, but they are limited to reasonable attorney fees incurred to collect restitution otherwise permitted under the statute.
This conclusion does not mean that a victim is prohibited from recovering attorney fees if those fees are incurred to recover both economic and noneconomic losses. Because the Legislature has directed that a victim be "fully reimburse[d]" for economic losses (§ 1202.4, subds.(f) & (g)), it would be improper to reduce the attorney fees incurred to obtain economic damages merely because those same attorney fees also led to the recovery of nonrecoverable damages (e.g., pain and suffering damages). Moreover, because of the strong public policy seeking to provide crime victims with direct restitution for all the "losses they suffer" (Cal. Const., art. I, § 28, subd. (b)), when fees cannot be reasonably divided between the pursuit of economic losses as opposed to noneconomic *834 losses, the victim is entitled to be fully reimbursed for all actual and reasonable attorney fees. (See People v. Broussard (1993) 5 Cal.4th 1067, 1075, 22 Cal.Rptr.2d 278, 856 P.2d 1134; People v. Lyon (1996) 49 Cal.App.4th 1521, 1525, 57 Cal.Rptr.2d 415.) Further, it is the defendant's burden to make a record showing the portion of the attorney fees that are not recoverable because they can be clearly attributed solely to a nonrecoverable category of damages.
Applying these principles here, it is undisputed Overton suffered economic losses (i.e., past medical expenses, lost wages, and anticipated future medical expenses and wage losses) as a result of Fulton's criminal conduct and that he incurred attorney fees in order to recover these losses. It is also undisputed that Overton sustained noneconomic losses (i.e., pain and suffering) as a result of Fulton's criminal conduct, and incurred attorney fees to recover those losses. The record shows the total attorney fees incurred to obtain recovery for these losses was $25,000. The record, however, does not contain any basis for concluding that the attorney services could be fairly apportioned between the two types of services.
In the trial court and on appeal, Fulton has suggested only one possible method for apportioning the attorney fees. He submits that the restitution should be limited to 25 percent of $13,307.35, the amount of the economic damages and related costs that Fulton claims Overton suffered. However, as discussed above, the evidence supports that Overton's economic damages were much greater than this amount. Further, as the trial court recognized, it is not reasonable to assume the value of the attorney's work can be reasonably divided to reflect a percentage of the economic damages and a percentage of the noneconomic damages. Rather, as is typical in car accident cases, an attorney's efforts necessarily focus on proving liability and the nature and extent of the plaintiffs economic damages, with the amount of noneconomic damages dependent on substantiating these issues. Commonly, attorney services expended in obtaining the two types of damages overlap and recovery of the noneconomic damages is dependent on the attorney's time and effort proving the victim's economic damages. Such was the case here.
Further, it is unnecessary to remand this case to determine whether there is any possible basis for apportionment because it appears the trial courtin addition to concluding the statute does not permit an apportionmentalso rejected Fulton's apportionment argument on a factual basis. This finding is supported by substantial evidence. The record shows that the trial judge was aware of the nature and extent of Overton's economic losses, understood the civil case would not settle until Savaglio convinced Wawanesa of these losses, and knew that the noneconomic damages would be easily established once the parties agreed upon the economic damages. The court further recognized that the attorney fees reflected Savaglio's efforts primarily in proving the validity of Overton's economic damages, which were so inextricably associated with his noneconomic damages that it would be impossible to attribute the fees to one category of damages over the other. The trial judge further expressed familiarity with the manner in which insurance companies evaluate personal injury actions, and was well aware that the total value of a case is typically driven by the amount of the economic damages the plaintiffs attorney can substantiate, with the noneconomic damages commonly set at a multiple of the economic damages.
*835 On this record, we conclude the trial court did not err in refusing to reduce the amount of attorney fees incurred because some portion of those fees was also incurred to obtain noneconomic pain and suffering damages.

II. Reasonableness of Fees

Fulton alternatively contends the attorney fees Overton incurred were not reasonable because it was not necessary for Overton to hire an attorney or to file a lawsuit to recover the $100,000 settlement. In support of this contention, Fulton maintains that liability was clear, there was little dispute over the amount of economic damages and early on Wawanesa was ready to settle the case for $70,000, an amount he claims was five times the economic damages. Fulton also contends that it was at his urging that Wawanesa paid Overton the policy limit of $100,000. Hence, he claims he is being punished for assisting the victim.
Contrary to Fulton's contentions, Overton was fully justified in retaining counsel and filing a personal injury action. An injured party acts reasonably in retaining the services of an attorney to assist in the recovery of damages sustained as a result of an automobile accident caused by a defendant's criminal conduct. Hiring an attorney on a contingency basis is a standard practice in a personal injury case, and a fee based on 25 percent of the total damages recovered is well within the acceptable range of contingency fees. (See Sommers v. Erb (1992) 2 Cal.App.4th 1644, 1651, 4 Cal.Rptr.2d 52.) In fact, it is common for contingent fees to exceed this percentage.
Further, although liability was not disputed, economic damages were. Based on the documents presented and representations made at the sentencing and restitution hearings, it was clear Wawanesa doubted the seriousness of Overton's physical injuries, questioned the need for further surgery and would not seriously consider Overton's policy limit settlement demand until these issues were resolved. Because the value of the settlement was necessarily dependent on proof concerning the nature and extent of Overton's physical injuries and the attendant medical expenses and lost wages, Savaglio's efforts concentrated on establishing the validity of these damages.
It was only after Overton's counsel filed a lawsuit, preliminary discovery was complete and a defense independent medical examination confirmed the need for future shoulder surgery that Savaglio was able to achieve the $100,000 settlement. To accomplish this, Savaglio informed the trial court that she expended 135 hours at the rate of $175 per hour and that her paralegal spent 50 hours at the rate of $50 per hour, a total of $26,125.
In view of Overton's serious injuries and the fact they were caused by Fulton, who was driving with a blood-alcohol level of 0.16 percent when he crashed head-on into Overton's car, it was reasonable for Overton to reject the $70,000 offer and seek nothing short of the $100,000 policy limit in settlement of the matter. From the documents submitted, the trial court had ample basis to conclude that Wawanesa was not willing to pay Overton the $100,000 until his attorney filed and prosecuted the lawsuit and substantiated Overton's injuries.
A trial court's determination that claimed attorney fees are reasonable will not be disturbed on appeal unless the court abused its discretion. (Sommers v. Erb. supra. 2 Cal.App.4th at pp. 1650-1652, 4 Cal.Rptr.2d 52.) The trial court did not abuse its discretion in determining the $25,000 attorney fee was reasonable.

*836 DISPOSITION
The restitution order is affirmed.
WE CONCUR: NARES, Acting P.J, and McDONALD, J.
NOTES
[1] All further statutory references are to the Penal Code.
[2] Fulton claims Overton's total economic losses were $12,500 ($8,900 for medical expenses and $3,600 for lost wages) and the Attorney General does not dispute this amount. This figure is inconsistent with the record as it does not include property damage losses or future lost wages associated with the anticipated surgery. The record indicates Overton's medical expenses as of June 1, 1999, were estimated at $7,200 and $8,916.35 as of August 23, 2000. Thus, the medical expenses advanced by Fulton do not appear to include the medical expenses for the future surgery and rehabilitation, estimated at $6,486.73.
[3] Section 1202.4, subdivision (f) reads in pertinent part:

"(f) In every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court. If the amount of loss cannot be ascertained at the time of sentencing, the restitution order shall include a provision that the amount shall be determined at the direction of the court. The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so, and states them on the record.
"(1) The defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution. The court may modify the amount, on its own motion or on the motion of the district attorney, the victim or victims, or the defendant....
[¶] ... [¶]
"(3) To the extent possible, the restitution order shall be prepared by the sentencing court, shall identify each victim and each loss to which it pertains, and shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following:
"(A) Full or partial payment of the value of stolen or damaged property....
"(B) Medical expenses.
"(C) Mental health counseling expenses.
"(D) Wages or profits lost due to injury incurred by the victim....
"(E) Wages or profits lost by the victim ... due to time spent as a witness or in assisting the police....
"(F) Noneconomic losses, including, but not limited to, psychological harm, for felony violations of Section 288.
"(G) Interest ... that accrues as of the date of sentencing....
"(H) Actual and reasonable attorney's fees and other costs of collection accrued by a private entity on behalf of the victim.
"(I) Expenses incurred by an adult victim in relocating away from the defendant ....
"(J) Expenses to install or increase residential security incurred related to a crime ....
"(K) Expenses to retrofit a residence or vehicle ... to make the residence [or vehicle] accessible to [a victim who becomes permanently disabled] ... as a direct result of the crime." (Italics added.)
[4] The sole exception is the Legislature's determination that noneconomic losses would be recoverable if they result from felony violations of section 288, the statute criminalizing lewd or lascivious acts performed on minors. (§ 1202.4, subd. (f)(3)(F).) When we refer to nonrecoverable noneconomic damages, we do not intend to include this exception, which is not applicable in this case.