Filed 9/9/14  P. v. Wright CA4

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C074282 |
| v. | (Super. Ct. No. SF118785A) |
| GREG ALAN WRIGHT, | |
| Defendant and Appellant. | |

Defendant Greg Alan Wright lost his home in a foreclosure sale.  Before moving out, he vandalized the home by removing many of the fixtures.  The purchaser spent the next several months repairing the damage and retained a law firm to recover the costs of the vandalism in a civil lawsuit, incurring attorney's fees in that process.

Defendant pleaded no contest to misdemeanor vandalism and felony unauthorized removal of fixtures from mortgaged or encumbered property.  The trial court suspended

1

imposition of sentence, placed defendant on probation, and ordered him to pay restitution for the damage to the property, plus $20,546.83 for the attorney's fees incurred in the civil action.

On appeal, defendant contends the trial court abused its discretion in awarding the attorney's fees to the extent the attorney's work did not contribute to the victim obtaining restitution in this criminal case.

Constitutional and statutory provisions authorize victim restitution to compensate for economic loss as a result of the defendant's criminal conduct. Such loss may include actual and reasonable attorney's fees accrued by a private entity on behalf of the victim. Here, the trial court did not abuse its discretion in awarding the attorney's fees, because the victim incurred the fees as a result of defendant's criminal conduct. The award was appropriate even if the legal fees were not incurred in an effort to obtain the restitution award.

We will affirm the judgment.

BACKGROUND[1]

In January 2010, real estate agent Katie Yu tried to help defendant and his wife, Sandy Wright, conduct a short sale of their home in Stockton.[2] When Yu was listing the property for sale, she went to the home and inspected it while defendant was present. The house was in good condition and nothing had been taken or removed from the property. Yu took photographs and posted them on a multiple listing service. The listing was withdrawn or cancelled in August 2010.

---

[1] Although the transcript of the preliminary examination is not a part of the appellate record, certain excerpts from the transcript were included in the People's March 4, 2013, request for judicial notice of testimony from that hearing. Only the excerpts attached to the request are properly before us. Defendant's opening brief includes a statement of facts relying on portions of the examination not contained in the appellate record.

[2] Sandy Wright was a codefendant at trial. She is not a party to this appeal.

2

Cindy Foster was the president of Foster Advantage, Inc. (FAI), a business that bought and sold real properties. FAI acquired defendant's home from a foreclosing lender during a courthouse auction in May 2011. The trustee's deed of sale to FAI was recorded on May 26, 2011.

After the sale, Foster spoke to Wright several times to see when she and defendant would vacate the property. Wright later told Foster that she would leave the keys under the door mat because she and defendant had finished moving out. When Foster sent a representative to get the keys, the representative reported that the house had been stripped of the water heater, toilets, cabinets, electrical outlets, baseboards, molding, smoke detectors, sinks, backsplashes, sheetrock, doors, door jambs, shelving, fans, electric control panels, and vent covers. In addition, the dishwasher had been removed from the kitchen, dragged along the hardwood floor, and left in the living room. Foster reported the situation to the Stockton Police Department.

FAI had to refurbish the house before it could be listed for sale. The house was listed in late November 2011 and the sale closed a month later.

On April 10, 2012, defendant pleaded no contest to misdemeanor vandalism (Pen. Code, § 594, subd. (a))[3] and felony unauthorized removal of fixtures from mortgaged or encumbered property (§ 502.5), in exchange for dismissal of other counts. The trial court suspended imposition of sentence and placed defendant on probation with various terms and conditions. The trial court initially ordered defendant to pay restitution in the amount of $20,000, but directed the probation department to determine if further restitution was required; if so, defendant could request a restitution hearing.

Defendant requested a restitution hearing, which the trial court conducted in May 2013. Foster testified that defendant stripped the home after FAI purchased it; she

---

**3** Undesignated statutory references are to the Penal Code.

prepared an itemized expense list that detailed the repairs and payments made to restore the home. The expense list included attorney's fees paid to the firm Murphy, Campbell, Guthrie and Alliston. Foster explained that FAI incurred about $16,000 in civil legal fees.

When asked how the fees were incurred, Foster explained: "I've never been in this situation before so I didn't know exactly how it worked. I knew that we would have to recover . . . our losses, and I just -- we thought that we needed to talk to an attorney and hire an attorney, and then we also had called the police and that's where . . . there's two different sides to it, there's a criminal, and we'd just been kind of holding him, but then the defendants filed a cross[-]complaint which we had to use our attorney for. And then he later rescinded that cross[-]complaint so we had other fees that we incurred through that end of it."

Mark Campbell testified on behalf of the civil law firm. He said the firm was retained by FAI for a civil matter. Campbell filed a complaint on FAI's behalf against defendant and Wright in the summer of 2011, one month to six weeks before the criminal action was filed. The complaint was "to recover for the property damage and removal of fixtures from" the FAI residence. The law firm performed various work including investigation, filing of the civil case, and service of process.

At some point, Campbell became aware that FAI had made a complaint with the city police or sheriff. The outcome of the criminal matter was uncertain. Campbell filed the civil complaint because "the idea was to get the civil action filed and get it going so that they were in position to recover their damages that way, and then if the criminal case was initiated, we could take a passive position in the civil case and try to . . . conserve the client's resources and allow the criminal case to get to completion and make a decision about what to do with the civil action."

Thereafter, Campbell maintained contact with the prosecutor for status reports on the criminal matter. Campbell performed more work on the civil case than he had

4

anticipated because he "received answers to the complaint from the defendants, and thereafter" defendants filed a cross-complaint in propria persona. At "considerable expense" to FAI, Campbell filed a demurrer to the cross-complaint and an anti-SLAPP (strategic lawsuit against public participation) motion (Code Civ. Proc., § 425.16). Defendants did not oppose either filing and both were successful. The civil case was still pending at the time of the May 2013 restitution hearing.

Campbell testified that if a criminal restitution order were entered, he would seek an agreement between defendant and FAI to dismiss the civil suit "supported by a mutual waiver of costs" that would be "a bar to any further action, such as malicious prosecution or something like that," so that FAI could "buy our peace completely and forever." FAI would have to feel "that they've recovered completely from the damages done" before Campbell would counsel FAI to end the civil case.

Campbell produced a billing summary[4] and testified that, as of that date, the total legal fees and costs were $20,546.83. FAI had paid about $17,000 and owed another $3,000. Defendant presented no evidence to refute the reasonableness of the claimed attorney's fees.

In July 2013, the trial court awarded restitution to FAI in the amount of $49,994.79, consisting of $29,447.96 for repairs to the house and $20,546.83 for attorney's fees. The trial court found, pursuant to section 1202.4, subdivision (f)(3)(H), that evidence at the restitution hearing substantiated that the amount of attorney's fees requested was reasonable "taking into consideration the nature of the civil litigation, the complexity of the issues, the experience and expertise of counsel and the amount of time

---

[4] The billing summary was marked People's Exhibit 40. The summary is not a part of the appellate record. Defendant's citations to the billing summary in his opening brief will be disregarded.

5

involved." In April 2014, the trial court modified the restitution order to indicate that the restitution had been paid.

DISCUSSION

Defendant contends the trial court abused its discretion in awarding the attorney's fees to the extent the attorney's work did not contribute to FAI obtaining restitution. He reasons that because the civil attorney, Mark Campbell, knew about the trial court's initial restitution order in 2012, the civil matter should not have been continued after that point and additional legal fees should not have been incurred. We disagree.

Article I, section 28, subdivision (b)(13)(A) of the California Constitution states: "It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer." In addition, section 1202.4, subdivision (f) provides in relevant part: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim . . . based on the amount of loss claimed by the victim . . . or any other showing to the court. . . . The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so and states them on the record."

Section 1202.4, subdivision (f)(3) states in relevant part: "To the extent possible, the restitution order shall . . . be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following: [¶] . . . [¶] (H) Actual and reasonable attorney's fees and other costs of collection accrued by a private entity on behalf of the victim."

In keeping with the "unequivocal intention" that criminals make restitution to victims, statutory provisions implementing the constitutional directive have been broadly and liberally construed. (*People v. Lyon* (1996) 49 Cal.App.4th 1521, 1525 (*Lyon*).) So

6

construed, section 1202.4, subdivision (f)(3)(H) requires restitution for the actual and reasonable attorney's fees that were accrued on behalf of FAI as a result of defendant's criminal conduct.

Defendant does not contend that any of the claimed attorney fees were accrued as a result of anything other than his stripping of FAI's house. (See *People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1320-1324 (*Holmberg*).) Thus, the attorney's fee award to FAI satisfies the causal element set forth in the Constitution and statutes. (See *People v. Jones* (2010) 187 Cal.App.4th 418, 424-427 [applying tort principles of causation to criminal victim restitution cases].)

Nonetheless, defendant claims a second causal element must be satisfied before he can be ordered to make restitution for FAI's legal expenses. He reasons that the attorney's fees (1) must result from his criminal conduct, and (2) the recovery of victim restitution must result from the legal services that generated the attorney's fees. Defendant claims the civil law firm did not achieve any actual result in the criminal case regarding the victim's claim for restitution.

Defendant's proposed second causal element does not appear in the constitutional or statutory language and can be implied only if those provisions are given a narrow, rather than broad and liberal, construction. We decline to give the constitutional and statutory attorney's fee provisions the narrow construction asserted by defendant. (*Lyon, supra,* 49 Cal.App.4th at p. 1525.)

Evidence at the restitution hearing explained why it was reasonable to pursue restitution in a civil action as well as in the criminal action, even though the former did not result in a restitution award. Defendant has not shown that FAI's legal strategy was unreasonable or causally unrelated to defendant's criminal conduct.

At the restitution hearing, defendant bore the burden of coming forward with information demonstrating that Campbell's additional expenses did not result from defendant's vandalism and were unrelated to FAI's claim for restitution. (*Holmberg,*

7

*supra*, 195 Cal.App.4th at p. 1320.)  He did not make the requisite showing, and the record does not establish that the ordered restitution was improper.

Defendant argues that once the trial court entered its initial restitution order there was no need for FAI to continue pursuing the civil case.  But defendant filed an answer and cross-complaint, resulting in additional attorney's fees.  Even if those legal services added nothing to the dollar amount of the restitution award, the trial court could find that those fees were reimbursable costs of collection for the ordered restitution.  (§ 1202.4, subd. (f)(3)(H).)  Defendant has not shown that the restitution award was an abuse of discretion.

Defendant cites *People v. Fulton* (2003) 109 Cal.App.4th 876 for the proposition that attorney's fees are recoverable as restitution only to the extent they were incurred "to collect restitution otherwise permitted under the statute."  (*People v. Fulton, supra,* 109 Cal.App.4th at pp. 884-885; accord, *People v. Millard* (2009) 175 Cal.App.4th 7, 33.)  This principle does not assist defendant, however, because here the statutory scheme permitted FAI to recover the fees.

DISPOSITION

The judgment is affirmed.


                                          MAURO          , J.


We concur:


        BLEASE        , Acting P. J.


        ROBIE        , J.