Filed 1/27/16  P. v. Sofranko CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DONALD ROBERT SOFRANKO, JR.,<br><br>    Defendant and Appellant. | 2d Crim. No. B263047<br>(Super. Ct. No. 1430074)<br>(Santa Barbara County) |

Donald Robert Sofranko, Jr., appeals from a postjudgment order requiring him to pay $219,568.12, i.e., the amount of attorney fees and costs, as restitution. The beneficiary of the restitution is James Nigro, the victim of appellant's felony assault. Appellant contends that the trial court erroneously required him to pay restitution for these fees and costs incurred by Nigro in bringing a civil action for damages resulting from the assault.  Appellant argues that, in an agreement settling the civil action, Nigro waived his right to attorney fees and costs, that the trial court erroneously failed to divide attorney fees between those incurred to collect economic damages and those incurred to collect noneconomic damages, and that Nigro was entitled to restitution only for those fees incurred to collect economic damages.  We reject each of these claims and affirm the restitution order.

*Factual and Procedural Background*

In March 2014 appellant pleaded no contest to an assault upon Nigro by means of force likely to produce great bodily injury. (Pen. Code, § 245, subd. (a)(4).) The trial court sentenced appellant to prison for three years, suspended execution of the sentence, and placed him on probation for three years on condition that he serve 180 days in county jail and pay restitution of $293,215.96 to Nigro. The court reserved jurisdiction to award additional restitution if warranted.

In September 2013 Nigro filed a civil action for damages arising from injuries and losses he had sustained as a result of appellant's assault. In July 2014, after the court in the criminal action had made its restitution order, Nigro made a $500,000 offer to compromise in the civil action. The offer was pursuant to Code of Civil Procedure section 998 (section 998). The offer stated: "Please be advised that this offer is inclusive of any and all attorney's fees and costs that may have been incurred. To avoid any confusion, this is a policy limit demand for the entire insurance policy limits available to [appellant] . . . ." The offer included an acceptance provision to be signed by appellant. This provision stated that "each side" would "bear his own attorney's fees and costs." Appellant's counsel signed the acceptance, and a $500,000 judgment was entered in Nigro's favor. Appellant's insurance company paid the judgment. In November 2014 Nigro's counsel acknowledged that the judgment had been satisfied.

In the criminal action, appellant filed a request that the settlement proceeds be offset against his restitution obligation of $293,215.96. In support of his request, appellant cited *People v. Bernal* (2002) 101 Cal.App.4th 155, which held: "[S]ettlement payments made to [the victim] by [defendant's] insurance carrier must be an offset to [defendant's] restitution obligation to the extent that those payments are for items of loss included in the restitution order." (*Id*., at p. 168.)

*Trial Court's Decision*

The trial court rendered a comprehensive, detailed and thorough17-page decision. It noted that "Nigro paid [his counsel] a 40% contingency fee ($200,000), and litigation costs of $19,568.36, all of which were deducted from the settlement amount [of

2

$500,000]." The court found the contingency fee to be reasonable. It therefore concluded that "the total amount of $219,568.36 is properly recoverable as victim restitution." The court explained, "The civil settlement was pursuant to a [section] 998 offer that stated that (for purposes of the civil action) each party would bear its own attorneys' fees and costs. Because [appellant] accepted the 998 offer as stated, the settlement amount of $500,000 therefore cannot be considered to include any reimbursement for attorneys' fees or costs, which would therefore remain reimbursable as . . . restitution [in the criminal action]."

The court continued: "When offsetting a defendant's restitution obligations by the amount of a civil settlement, the court must determine what portion of the settlement payment is directed to cover economic losses . . . . Only that portion of the settlement may be used to reduce the defendant's [restitution] obligation [in the criminal action]. [Citation.]" (Underlining omitted.) As to the $500,000 civil settlement, the court allocated $176,967.81 to economic losses and $323,032.19 to noneconomic losses. The court noted that "[t]he amount ascribed to economic damages works out to just over 35% of the [$500,000] settlement amount."

The court determined that Nigro's total documented economic losses to date, including reasonable attorney fees and costs, were $423,671.08. From this amount the court deducted $176,967.81, the portion of the $500,000 civil settlement allocated to economic losses. "[T]he offset results in a victim restitution [award] of $246,693.27."

*Nigro Was Entitled to Recover Attorney Fees and*

*Costs as Restitution in the Criminal Action*

Appellant argues that the trial court erroneously awarded restitution for Nigro's attorney fees and costs of $219,568.36. Appellant contends that, in the section 998 civil settlement, Nigro waived his right to attorney fees and costs. This issue involves contractual interpretation. "A judgment entered pursuant to the acceptance of a section 998 offer is 'a stipulated or consent judgment' that is regarded as a contract between the parties and 'must be construed as any other contract.' [Citations.]" (*Chinn v.KMR Property Managemen* (2008) 166 Cal.App.4th 175, 184.) Because there is no extrinsic

3

evidence as to the meaning of the section 998 settlement, we independently construe the contract from the writing alone. (*Banning Ranch Conservancy v. Superior Court* (2011) 193 Cal.App.4th 903, 915.)

The term " 'waiver' generally denotes the voluntary relinquishment of a known right . . . ." (*Saint Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195, fn. 3.) In the civil action, Nigro waived any right that he may have had to attorney fees and costs. The acceptance provision of the section 998 offer stated that "each side" would "bear his own attorney's fees and costs." Nigro could have sought attorney fees pursuant to Code of Civil Procedure section 1021.4, which provides: "In an action for damages against a defendant based upon that defendant's commission of a felony offense for which that defendant has been convicted, the court may, upon motion, award reasonable attorney's fees to a prevailing plaintiff against the defendant who has been convicted of the felony."

The attorney fee provision in the section 998 civil settlement applies only to the civil action. The provision does not mention and therefore does not apply to restitution in the criminal action. Appellant was entitled to restitution for his attorney fees and costs pursuant to Penal Code section 1202.4, subdivision (f)(3)(H), which provides that a restitution order "shall fully reimburse the victim . . . for every determined economic loss incurred as the result of the defendant's criminal conduct," including "[a]ctual and reasonable attorney's fees and other costs of collection accrued by a private entity on behalf of the victim." If appellant wanted Nigro to waive his right to attorney fees and costs under Penal Code section 1202.4, subdivision (f)(3)(H), he should have demanded that the section 998 settlement include an express waiver of this right.

In any event, an express waiver would not have shielded appellant from a restitution order requiring him to pay Nigro's attorney fees and costs. "A restitution order has objectives beyond simply indemnifying the victim. . . . 'Among other things, California's restitution law ensures that amends are made to society for a breach of the law, serves a rehabilitative purpose, and acts as a deterrent to future criminality. [Citations.]' " (*People v. Bernal*, *supra*, 101 Cal.App.4th at pp. 161-162.) "While a

4

settlement agreement with, and release of, a defendant's insurance company may reflect a victim's willingness to accept the amount paid in full satisfaction for all civil liability, it does not reflect the willingness of the People to accept that sum in satisfaction of the defendant's rehabilitative and deterrent debt to society. . . . [A] release by the victim cannot act to release a defendant from his financial debt to the state any more than it could terminate his prison sentence. [¶] . . . [T]here is no reason that a release of civil liability should release a restitution obligation, just as a satisfied restitution obligation does not bar a civil action for further damages. [Citation.]" (*Id*., at pp. 162-163.)

*The Trial Court Was Not Required to Divide Attorney Fees*

*Between Those Incurred to Collect Economic Damages*

*and Those Incurred to Collect Noneconomic Damages*

"With one exception [not applicable here], restitution orders are limited to the victim's economic damages." (*People v. Smith* (2011) 198 Cal.App.4th 415, 431.) [1] A victim is entitled to restitution for reasonable attorney fees incurred to collect economic damages. On the other hand, a victim is not entitled to restitution for attorney fees incurred to collect noneconomic damages. (*People v. Fulton*, *supra*, 109 Cal.App.4th at pp. 884-885.)

Appellant contends that the trial court erroneously failed to divide attorney fees between those incurred to collect economic damages and those incurred to collect noneconomic damages. In its decision the trial court recited and emphasized the following rule of law: "[W]hen fees cannot be reasonably divided between the pursuit of economic losses as opposed to noneconomic losses, the victim is entitled to be fully reimbursed for all actual and reasonable attorney fees. [Citations.]" (*People v. Fulton*, *supra*, 109 Cal.App.4th at p. 885.) The court impliedly found that the $200,000 contingent fee could not be reasonably divided between the pursuit of economic and

---

[1] "The sole exception is the Legislature's determination that noneconomic losses would be recoverable if they result from felony violations of [Penal Code] section 288, the statute criminalizing lewd or lascivious acts performed on minors. ([Pen. Code,] § 1202.4, subd. (f)(3)(F).)" (*People v. Fulton* (2003) 109 Cal.App.4th 876, 884, fn. 5.)

noneconomic losses. We review its finding for abuse of discretion. (*People v. Millard* (2009) 175 Cal.App.4th 7, 26 [" 'The standard of review of a restitution order is abuse of discretion' "].)

We uphold the court's finding because appellant failed to carry his burden of showing the extent to which the $200,000 fee was incurred solely to collect noneconomic damages. "Once the record contains evidence showing the victim suffered economic losses and incurred reasonable attorney fees to recover those losses, this showing establishes the amount of restitution the victim is entitled to receive, unless challenged by the defendant. In that event, the burden shifts to the defendant to show the portion of the attorney fees that are not recoverable because those fees can be attributed solely to a nonrecoverable category of noneconomic losses." (*People v. Fulton*, *supra*, 109 Cal.App.4th at p. 886.) The *Fulton* court concluded that "there is no due process impediment in placing the burden of proving apportionment of fees between economic and noneconomic damages on the defendant." (*Id*., at pp. 886-887.)

Appellant argues, "At the very least, if this Court determines the trial court's determination that [approximately] 35% of the $500,000 settlement was attributable to Nigro's economic recovery, the same standard should apply for attorney's fees and costs." Thus, Nigro "should be entitled to no more than 35% [of $200,000] or $70,000 in attorney's fees and $6,848.93 in costs." But "it is not reasonable in this case to assume the value of the attorney's work can be reasonably divided to reflect a percentage of the economic damages and a percentage of the noneconomic damages. Rather, as is typical in [personal injury] cases, an attorney's efforts necessarily focus on proving liability and the nature and extent of the plaintiff's economic damages, with the amount of noneconomic damages dependent on substantiating these issues. . . . Also, it is common for attorney services expended in obtaining the two types of damages to overlap and for the recovery of the noneconomic damages to be dependent on the attorney's time and effort proving the victim's economic damages." (*People v. Fulton*, *supra*, 109 Cal.App.4th at pp. 887-888.) "On this record, we conclude the trial court did not err in refusing to reduce the amount of attorney fees incurred because some portion of those

fees was also incurred to obtain noneconomic pain and suffering damages." (*Id*., at p. 888.)[2]

*Disposition*

The order appealed from is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

---

[2] For the first time in his reply brief, appellant argues: "[T]he court should substantially reduce [the] award [of attorney fees] because 1) Nigro did not make a prima facie case that $219,568.36 was reasonable and 2) even if Nigro did make a prima facie case that his attorney's fees were reasonable, [appellant] rebutted that presumption." We do not consider this argument. " 'Points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before. To withhold a point until the closing brief deprives the respondent of the opportunity to answer it or requires the effort and delay of an additional brief by permission.' [Citations.]" (*People v. JTH Tax, Inc.* (2013) 212 Cal.App.4th 1219, 1232.)

Thomas P. Anderle, Judge

Superior Court County of Santa Barbara

_____

Brian S. Dewy, Christine W. Chambers; Hager & Dowling, for Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr. , Supervising Deputy Attorney General, Tita Nguyen, Deputy Attorney General, for Plaintiff and Respondent.