Filed 8/11/16  P. v. Ramirez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G051046 |
| v. | (Super. Ct. No. 11NF0916) |
| CHARLES THOMAS RAMIREZ, JR., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a postjudgment order of the Superior Court of Orange County, James A. Stotler, Judge.  Affirmed.

John N. Aquilina, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., Quisteen Shum, and Lise S. Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

In a prior appeal from his first degree murder conviction, defendant Charles Thomas Ramirez, Jr. contended the court improperly instructed the jury. (*People v. Ramirez* (Sept. 2, 2015, G049845) [nonpub. opn.].)[1] We affirmed the judgment.

Defendant now appeals from the court's victim restitution order, arguing the court abused its discretion and violated his due process rights by relying on the determination of the Victim Compensation and Government Claims Board (the board) that certain claimants were entitled to restitution. The contention has no merit. We affirm the postjudgment order.

FACTS AND PROCEDURAL HISTORY

A jury convicted defendant of the first degree murder of Larry Ruiz. The court sentenced defendant to a prison term of 50 years to life for the murder and an attached firearm enhancement.

Subsequently, the court conducted a restitution hearing, where the People introduced into evidence some certified records from the board. The court admitted the certified records into evidence as People's exhibit 46 (exhibit 46).

Exhibit 46 consists of the following.[2] The first two documents (the certificates) are entitled "Certification of Records for Restitution Hearing," and state they concern defendant's case number 11NF0916 (the superior court case number). The certificates are on the board's letterhead and bear the board's embossed seal. The board's authorized custodian of records signed the certificates under penalty of perjury.

---

[1] We grant defendant's motion for judicial notice of the record in *People v. Ramirez*, *supra*, G049845.

[2] Pursuant to California Rules of Court, rule 8.224(d), we directed the superior court to transmit exhibit 46 to this court.

2

The certificates state the attached documents are the records of seven claimants and specify each claimant's identification number (with one claimant listed twice because he has two identification numbers). The certificates then report the dollar amount paid by the board's victim compensation program with respect to each identification number for "Mental Health" and, as to one claimant, for "Funeral/Burial" expenses.

The board's custodian of records certified that the records attached to the certificates were accurate copies of bills submitted to and paid by the board's victim compensation program, but that the records were redacted pursuant to Penal Code section 1202.4, subdivision (f)(4)(B)[3] and Government Code section 13954, subdivision (d), to protect the victims' privacy and safety or consistently with any legal privilege. The redacted records consisted of many "Health Insurance Claim Forms" per claimant, detailing the dates of service (apparently for mental health counseling) and the charges per service date. The health insurance claim form itself does *not* ask the applicant to specify his or her relationship to the actual victim of the crime, nor does it contain any space to do so. Thus, even if the forms in exhibit 46 had not been redacted, they would have shed no light on each claimant's relationship to Larry Ruiz.

Based on exhibit 46, the court ordered defendant to pay $23,460 to the board as reimbursement for its payments to the claimants, as well as 10 percent interest from the date of sentencing.

DISCUSSION

Defendant challenges the court's restitution order as to all claimants other than Larry Ruiz's father. As to the other six claimants (the disputed claimants),

---

[3] All statutory references are to the Penal Code unless otherwise stated.

defendant contends the prosecution failed to meet its burden of proof to show they were "victims" within the meaning of section 1202.4 or "derivative victim[s]" as defined in Government Code section 13955. He asserts there is no statutory presumption that an applicant is entitled to reimbursement for expenses, and that no statute authorizes the *board* to determine who is a victim or derivative victim. He further argues the board had no official duty (within the meaning of Evidence Code section 664) to determine whether the disputed claimants qualified for reimbursement. He concludes the prosecution failed to meet its burden of proof merely by submitting exhibit 46, which showed only that the board had paid financial assistance to the disputed claimants. He concludes that the court, in the absence of evidence of the disputed claimants' relationship to Larry Ruiz, abused its discretion and violated his due process rights by delegating to the board the determination of the disputed claimants' eligibility for reimbursement.

*The Law Governing Victim Restitution*

Every person who suffers a loss as a result of criminal activity has a constitutional right to restitution from the convicted wrongdoer. (Cal. Const., art. I, § 28, subd. (b)(13).) Victims may obtain restitution (1) directly from the defendant pursuant to a *court* restitution order, and/or (2) indirectly from the *board's* restitution fund.[4] (*People v. Giordano* (2007) 42 Cal.4th 644, 651-653 (*Giordano*).)

*Indirect victim restitution from the board*

Government Code section 13950 et seq. governs the procedure by which crime victims obtain compensation from the board's restitution fund. (Gov. Code, §13950, subd. (b).) A claimant must file an application with the board, and verify it

---

[4]    We use the adverbs, "directly" and "indirectly," and the adjectives, "direct" and "indirect," to describe whether the defendant is ordered to make, or the board makes, a payment.

4

under penalty of perjury. (Gov. Code, § 13952, subds. (a), (b)(1).) The board's staff determines whether an application contains all the information required by the board. (Gov. Code, § 13952, subd. (c)(2).) The board must verify any pertinent information it deems necessary (for example, by contacting hospitals or physicians) and must keep any information it receives confidential. (Gov. Code, § 13954, subds. (a), (d)(2).)

Government Code section 13951, subdivision (c) defines a "derivative victim" as "an individual who sustains pecuniary loss as a result of injury or death to a victim." As relevant here, the definition of "derivative victim" includes any person who at the time of the crime was the parent, grandparent, sibling, spouse, child, or grandchild of the victim, or was living in the victim's household, or was another family member who witnessed the crime. (Gov. Code, § 13955, subd. (c)(1), (2), (4).)

A derivative victim may be reimbursed for outpatient mental health counseling in an amount up to $5,000 or $10,000, depending on his or her relationship to the victim of the crime. (Gov. Code, § 13957, subds. (a)(2)(A), (B).) If the board's staff recommends denial of an application, the applicant is entitled to a hearing before the board, where the applicant bears the burden of establishing, by a preponderance of the evidence, the elements for eligibility under Government Code section 13955 (which includes derivative victim requirements). (Gov. Code, § 13959, subds. (a), (c).)

Under the board's regulations, an application is deemed complete only if, inter alia, the applicant designates whether he or she is a victim, derivative victim, or other person. (Cal. Code Regs., tit. 2, § 649.7, subd. (a)(2).) The victim compensation program's application form requires the applicant to specify his or her relationship to the victim in a box (in section 1 of the application) where a scroll-down menu provides the following exclusive choices for describing the relationship: "Self (I am the victim)," "Paying the Deceased Victim's Crime-Related Expenses," "Victim's Child," "Victim's Parent," "Victim's Adoptive Parent," "Victim's Spouse," "Victim's Brother or Sister," "Victim's Grandparent," "Victim's Grandchild," "Victim's Foster Parent," "Victim's

Legal Guardian," "Living in the Household of the Victim," "Previously Lived in Household of the Victim," "Family Member that Witnessed the Crime," "Primary Caretaker of Victim," or "Other." (http://www.vcgcb.ca.gov/victims/howtoapply.aspx.)[5] These choices correspond to the Government Code's requirements for a person's eligibility for victim compensation. (Gov. Code, § 13955, subds. (a), (c).)

*Direct victim restitution ordered by a court*

Section 1202.4 implements the funding of both direct and indirect victim compensation by requiring a convicted criminal generally to pay both a "restitution fine" *and* restitution to his or her victims. (§ 1202.4, subds. (a)(3)(A), (B).) The restitution fine — which is "separate and additional" to restitution payments to victims (§ 1202.4, subd. (b)) — is deposited into the board's restitution fund which funds its victim compensation program. (1 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Introduction to Crimes, § 121, p. 198.) A defendant's restitution payments, on the other hand, are (1) paid directly to his or her victim(s), or (2) as reimbursement to the restitution fund (to the extent the board has already compensated such victim(s)). (§ 1202.4, subds. (f), (f)(2).)

Section 1202.4 requires a sentencing court to order a defendant to pay restitution to any victim who has suffered "economic" loss as a result of the defendant's conduct. (*Id*., subds. (a)(3), (f).) A "defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution." (*Id*., subd. (f)(1).)

At the restitution hearing, the victim or the People (on the victim's or the board's behalf) bear the initial burden to make a prima facie showing of a compensable loss. (*People v. Fulton* (2003) 109 Cal.App.4th 876, 886; *Giordano*, *supra*, 42 Cal.4th at

---

[5] The application form currently available on the board's official Web site was revised in February 2016, and collects information pursuant to Government Code sections "13952 et seq. and 13954."

6

p. 664; § 1202.4, subd. (f) [court's restitution order is based on the victim's claimed amount of loss or any other showing]; *People v. Millard* (2009) 175 Cal.App.4th 7, 26 [the People may make a prima facie showing on victim's behalf].)  Under a statutory presumption described in section 1202.4, subdivision (f), the victim (or the People) may make the prima facie showing based, at least in part, on *the board's prior payment to such victim.*  Specifically, payments made from the board's restitution fund to a victim or derivative victim are "presumed to be a direct result of the defendant's criminal conduct and shall be included in the amount of the restitution ordered" by the court.  (§ 1202.4, subd. (f)(4)(A).)  Furthermore, the dollar amount of such payments from the restitution fund may be proved by submitting certified, redacted copies of bills showing the amount paid by the board and whether the payments were made for, inter alia, funeral or burial expenses, or mental health counseling, "together with a statement made under penalty of perjury by the custodian of records that those bills were submitted to and were paid by the board . . . ."  (§ 1202.4, subd. (f)(4)(B).)[6]

---

[6]        The Legislature enacted these section 1202.4, subdivision (f) presumptions in 1999.  The legislative purpose was to protect the confidentiality of victims' private information and to better assure that defendants must reimburse the board for payments made from the restitution fund:  "The [board] works actively to ensure that the courts order restitution on defendants for at least the amount of the [victim compensation program] payments to a victim.  In order to contest the courts' determination of this amount, defendants frequently request to review a victim's [victim compensation program] files.  [Senate Bill] 1802 would create a statutory presumption that would preclude this disclosure unless the defendant can demonstrate a reason to rebut this presumption.  This presumption would state that all amounts paid by the [victim compensation program] to the victim are the result of the defendant's criminal activity and should, therefore, be included in a restitution order.  [Senate Bill] 1802 would place the burden of proof on the defendant and only allow disclosure after a judge reviews the requested information in camera.  Judges would, in turn, be required to redact the requested information in such a manner to protect private or compromising information."  (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1802 (1999-2000 Reg. Sess.) as amended Apr. 11, 2000, p. 3.)

If the victim (or the People) succeed in making a prima facie case, the burden shifts to the defendant to disprove the claim. (*People v. Fulton*, *supra*, 109 Cal.App.4th at p. 886; *People v. Prosser* (2007) 157 Cal.App.4th 682, 690-691; *People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543.)

As relevant to the case at hand, section 1202.4's definition of "victim" includes any person who sustained economic loss and was, at the time of the crime, the parent, grandparent, sibling, spouse, child, or grandchild of the victim, or living in the victim's household, or another family member who witnessed the crime. (*Id*., subd. (k)(3)(A), (B), (D).) This definition corresponds identically to Government Code section 13955's definition of "derivative victim." Reinforcing this integration between the two statutory schemes, section 1202.4's definition of "victim" also includes a "person who is eligible to receive assistance from the Restitution Fund pursuant to" Government Code section 13950 et seq. (§ 1202.4, subd. (k)(4).)

*The Restitution Hearing and the Court's Ruling in This Case*

At the restitution hearing, the prosecutor argued the People had met their burden of proof by submitting exhibit 46 pursuant to the statutory presumption under section 1202.4, subdivisions (f)(4)(A) and (B).[7]

Defense counsel disagreed. She observed that five of the claimants were "not listed anywhere on the police report," that their relationship to Larry Ruiz was not stated anywhere in exhibit 46, and that they were not percipient witnesses.

---

[7] The prosecutor erroneously referred to section 1202.4, subdivisions (j)(4)(A) and (B), which do not exist.

8

The prosecutor countered that the board had determined these claimants were victims.[8]

Defense counsel rejoined that the *court* was required under section 1202.4 to determine whether the claimants were victims. She argued that a victim's niece or nephew would not qualify for restitution under section 1202.4.

The court noted that, because the documents in exhibit 46 were redacted, it could not determine whether any claimant's relationship fell within section 1202.4, subdivision (k)(3)(A). The court observed that exhibit 46 did not specify the relationship between the claimants and Larry Ruiz, and did not certify the claimants' eligibility for restitution, but did state that, under Government Code section 13954, subdivision (d), the communications between the board and claimants were confidential and therefore the attached bills had been redacted. The court suggested perhaps it could infer that the board had ascertained the claimants' status as victims. The court concluded the board had performed an official duty. Based on exhibit 46 and Government Code section 13954, the court ordered defendant to pay $23,460 (plus interest) to the board as reimbursement for amounts paid to the victims from the restitution fund. The court ordered the Department of Corrections to deduct such restitution from defendant's earnings.

---

[8] The prosecutor stated the claimants all lived at the house behind "Fullerton where Larry Ruiz was murdered by" defendant, and specified their purported relationship to Larry Ruiz. But when the court asked whether the prosecutor was making an offer of proof, the prosecutor stated he was *not* doing so, because exhibit 46 "speaks for itself."

*The Court Did Not Abuse Its Discretion or Violate Defendant's Due Process Rights*

Defendant contends the court abused its discretion by delegating to the board the determination of whether the disputed claimants were victims.

Both parties argue this court should review the trial court's restitution order for an abuse of discretion.[9] The abuse of discretion standard of review "'asks in substance whether the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts [citation].'" (*Giordano*, *supra*, 42 Cal.4th at p. 663.)

As we shall explain, we conclude the trial court acted well within its discretion by ordering defendant to pay restitution based on exhibit 46.

In 1982, California voters passed Proposition 8 (the Victims' Bill of Rights), expressing their clear intent that victims should receive restitution from the criminals who caused their losses. (*Giordano*, *supra*, 42 Cal.4th at p. 652; Cal. Const., art. I, § 28, subd. (b)(13).) Toward this end, the Legislature established a dual system that provides victims with direct and indirect restitution. Direct restitution ensures that criminals will pay for the costs of victim compensation to the greatest extent possible. Indirect restitution enables victims to obtain compensation from a government agency. Section 1202.4 (governing direct restitution) and Government Code section 13950 et seq. (governing indirect restitution) work in tandem to enable and assist "'victims to receive restitution, both directly and from the restitution fund.'" (*Giordano*, at p. 653.)

These parallel statutory schemes aim collectively to create a flexible, accessible, and relatively speedy system for compensating victims of crime and for funding such compensation with fines and restitution paid by the criminals who caused the harm. The efficiency and financial sustainability of the system would be undercut if sentencing courts were required to independently confirm the board's determinations that claimants qualified as derivative victims.

---

[9] Neither party requests this court to interpret section 1202.4 or to determine its constitutionality.

Nor is such duplicative decision making necessary. The Legislature has charged the board with the duty of determining an applicant's eligibility for compensation from the restitution fund. Pursuant to Government Code section 13952, the board's regulations, and the victim compensation program's claim application form, an applicant must specify, under penalty of perjury, the basis for his or her claimed victim status. Government Code sections 13952, 13954, and 13959 require the board and its staff to obtain all necessary information either to verify the applicant's eligibility for compensation or to deny the application. Given their focused mission, the board and its staff are arguably better suited than a sentencing court for the task of efficiently verifying an applicant's victim status.

Furthermore, the board is a state agency (*People v. Cain* (2000) 82 Cal.App.4th 81, 88) and its actions taken pursuant to statutory mandates constitute official duties (see *County of Los Angeles v. Young* (1961) 196 Cal.App.2d 405, 411 [administrative officers charged by the Legislature with administrative duties].) "[T]hese statutory . . . duties are significant because, under Evidence Code section 664, '[i]t is presumed that official duty has been regularly performed.' This presumption 'affect[s] the burden of proof' [citation], meaning that the party against whom it operates — here, the defendant — has 'the burden of proof as to the nonexistence of the presumed fact.'" (*People v. Martinez* (2000) 22 Cal.4th 106, 125.) "[W]hat is actually presumed under Evidence Code 664 is *compliance with statutory and regulatory standards*, which in turn gives rise to an inference of reliability." (*Davenport v. Department of Motor Vehicles* (1992) 6 Cal.App.4th 133, 144.)

One factor "to consider in evaluating whether the burden of proof should be shifted from one party to the other is 'the most desirable result in terms of public policy in the absence of proof of the particular fact . . . .'" (*People v. Fulton* (2003) 109 Cal.App.4th 876, 887.) Here, the policy of fully reimbursing the victim would be

11

defeated if the cohesive system designed by the Legislature were dissected into two independent and duplicative spheres.

The Legislature has clearly sought to minimize duplicative fact finding that jeopardizes the confidentiality of victims' information. Thus, section 1202.4 expressly provides that payments made from the restitution fund to "a victim or derivative victim" are "presumed to be a direct result of the defendant's criminal conduct and shall be included in the amount of the restitution ordered" (*id*., subd. (f)(4)(A)) and that copies of redacted bills certified by the board's custodian of records constitute sufficient evidence of the "amount of assistance provided by the Restitution Fund" (*id*., subd. (f)(4)(B)). Section 1202.4 further specifies that a "person who is eligible to receive assistance from the Restitution Fund" is a "victim" for purposes of the statute. (*Id*., subd. (k)(4).)

At the restitution hearing to which a defendant is entitled (§ 1202.4, subd. (f)(1)), he or she may rebut section 1202.4's presumption that the board has properly paid a claimant. Here, defendant acknowledges he received notice and an opportunity to disprove the eligibility of the disputed claimants. This is all the due process to which he was entitled. (*People v. Cain* (2000) 82 Cal.App.4th 81, 86 [concerning restitution as a condition of probation].) "[N]umerous courts have held that restitution hearings require fewer due process protections than civil hearings or criminal hearings of guilt." (*Giordano*, *supra*, 42 Cal.4th at p. 662, fn. 6.) "The scope of a criminal defendant's due process rights at a hearing to determine the amount of restitution is very limited." (*Cain*, at p. 86.) Restitution hearings are intended to be "'a summary proceeding ancillary to sentencing for a criminal offense.'" (*Giordano*, at p. 670 (dis. opn. of Kennard, J.).)

The court did not abuse its discretion or violate defendant's due process rights by ruling the People had met their burden of proof by introducing exhibit 46 into evidence.

12

DISPOSITION

The postjudgment order is affirmed.


                                    IKOLA, J.

WE CONCUR:


ARONSON, ACTING P. J.


FYBEL, J.