Filed 3/18/21  P. v. Sohal CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BALWINDER SINGH SOHAL,<br><br>Defendant and Appellant. | C082871<br><br>(Super. Ct. No. CRF1410004203) |

Defendant Balwinder Singh Sohal pleaded no contest to receiving stolen property (Pen. Code, § 496, subd. (a))[1] and possession of methamphetamine, a misdemeanor (Health & Saf. Code, § 11377).  He was placed on five years' formal probation subject to various conditions, including the payment of $49,200 in victim restitution.

---

[1] Further undesignated statutory references are to the Penal Code in effect at the time of the charged offenses.

1

On appeal, defendant contends the award of $42,000 in restitution for a stolen tractor was an abuse of discretion not supported by substantial evidence of replacement value. The Attorney General responds that the award was not too high, and, instead argues that the court should have awarded $89,000, the cost of purchasing a new tractor.

The victim's testimony established a prima facie case for the $42,000 award, which was not rebutted by defendant's evidence. Awarding the $89,000 cost of the replacement tractor that the victim still owns would constitute a windfall.

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of defendant's crime are taken from the factual basis of his plea, which he entered pursuant to *People v. West* (1970) 3 Cal.3d 595.

Defendant aided in concealing and withholding property he knew to be stolen, a John Deere tractor with a value exceeding $20,000, a 1,000-gallon fuel tank with 200 gallons of fuel with a total value of $9,000, and a 500-gallon fuel tank valued at $8,000.

Restitution for the victim was one of the terms of the plea agreement, but the amount of restitution was not stipulated. The probation report stated that the victim John Thunen estimated a monetary loss of $50,000, which included purchasing two tractors for $25,000 apiece. The report recommended defendant pay $50,000 in victim restitution to Thunen.

Defendant requested a restitution hearing at sentencing. Thunen was the hearing's sole witness. His tractor was stolen in February 2013. He bought the John Deere tractor for $63,400 in 2001. It was a "100-horse orchard tractor." The tractor had as upgrades "Nelson fenders" to keep the crop from getting knocked off and a "Nelson spray cab," which protects the driver from rollovers and is made of stainless steel so it does not rust. When the trial court asked about the tractor's value, Thunen replied it was $42,000 for the used value of the tractor with the upgrades.

2

According to Thunen, the fenders and cab were upgrades that are in "hot demand." A tractor with these features had to be ordered a year in advance. Thunen could not wait that long for a replacement because the tractor was stolen during spraying season and he needed a tractor to pull the crop sprayer. If he had not found a new tractor quickly, he may have lost his crop and his business. Thunen stated, "I had no choice if I want to stay going."

Thunen purchased a new tractor from a local dealership for $89,000 on the day his tractor was stolen because he "needed to be spraying." No used tractors were available and he could not rent a tractor because the rental companies do not rent tractors to farmers who are going to use the tractor for spraying. The tractor he purchased to replace the stolen tractor had a less desirable John Deere cab and did not have the Nelson fenders. At the time of the hearing, he still had the new tractor, and estimated it was now worth $40,000 to $60,000, or possibly a little more.

The original tractor was superior to the new one because it was all steel and did not have plastic parts like the new tractor. The old tractor did not have computerized emission controls, and was thus more desirable because although the emission controls cause a tractor to burn cleaner, they also made the tractor less reliable. Thunen's original tractor was "the last of its kind" and he never planned to get rid of it. A person could not find a tractor like this and if one was available, the seller could name the price due to the high demand for such a vehicle.

Thunen's insurance company presented to him what it thought were two comparable tractors, valued respectively at $23,977 and $21,808. Neither tractor was appropriate because both were on the East Coast and used by dairy farmers. These tractors were not specialized for orchard use as he needed. After 40 hours dealing with the insurance company, Thunen accepted $33,000 although he thought the amount was too low.

Thunen billed his time at $150 an hour when he did commercial work with sprayers. He spent eight hours talking to the dealership about the replacement tractor.

Defense counsel argued restitution should be set at the cost of either of the $23,977 or $21,808 tractors offered by the insurance company or the $33,000 paid by the insurance. Counsel argued Thunen's testimony that the tractor was worth $42,000 when it was stolen was not reliable evidence of value because it was based on what Thunen thought the vehicle was worth. The prosecutor argued for the $89,000 cost of the new replacement tractor.

The trial court found awarding the $89,000 sought by the prosecution would be a windfall for Thunen as he still had that tractor. Thunen's valuation of the stolen tractor was reliable, supported by his testimony regarding the tractor's specialized equipment, it being the last of its kind, and in high demand. The court observed, "This isn't a Toyota Camry where we can go out and get 15 million comparable estimates." In addition to the $42,000 for the tractor, the court also awarded $7,200 for the time Thunen spent getting the tractor, for a total award of $49,200.

## DISCUSSION

Defendant contends the trial court erred in awarding $42,000 in restitution for the tractor. He argues this valuation was not supported by substantial evidence, and if even there was substantial evidence supporting this valuation, he carried his burden of proving the victim sustained a smaller economic loss, namely the values of the two replacement tractors offered by the insurance company, $23,977 and $21,808, or the $33,000 that the insurance company paid to the victim. The People, while disagreeing with defendant's argument, add that the trial court should have awarded restitution for the $89,000 price the victim paid for the replacement tractor because the victim had to buy that tractor or go out of business.

The California Constitution provides that crime victims have a right to restitution when they suffer losses as a result of criminal activity. (Cal. Const., art. I, § 28,

4

subd. (b)(13); see *People v. Giordano* (2007) 42 Cal.4th 644, 652.) This constitutional mandate is implemented by section 1202.4. (See *Giordano*, at p. 656.) Subdivision (f) of section 1202.4 provides, with certain exceptions not applicable here, that "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court."

Subdivision (f)(3) of section 1202.4 further provides, in pertinent part, as follows: "To the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to, all of the following:  [¶]  (A) Full or partial payment for the value of stolen or damaged property. The value of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible."

When calculating the amount of restitution, the court must " 'use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.' " (*People v. Mearns* (2002) 97 Cal.App.4th 493, 498.) The amount of restitution must have a " 'factual and rational basis.' " (*Id*. at p. 499.) Appellate courts review restitution orders for abuse of discretion, and will not reverse unless the order is arbitrary or capricious. (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1045.) "[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.] 'If the circumstances reasonably justify the [trial court's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact." (*People v. Baker* (2005) 126 Cal.App.4th 463, 469.) Once the victim makes a prima facie showing of economic

5

losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim. (*People v. Fulton* (2003) 109 Cal.App.4th 876, 886.)

Defendant asserts Thunen's testimony did not establish a replacement cost for his tractor but was instead "a rough estimate of what he would have accepted to *sell* the tractor at the time it was stolen." He argues his case analogous to *People v. Chappelone* (2010) 183 Cal.App.4th 1159, where the Court of Appeal found restitution for merchandise stolen from a Target store based on the retail rather than the wholesale cost of the items was an improper windfall, as the wholesale cost reflected the true cost to replace the items. (*Id.* at pp. 1173, 1178-1179.) Defendant claims the price at which Thunen would sell his tractor is not the replacement cost of that vehicle.

However, unlike Target, the victim in this case is not in the business of buying goods at a wholesale price and selling them at a retail price. Thunen is a farmer, and is not in the business of buying and reselling tractors. To Thunen, a tractor is a necessary capital expenditure which allows him to conduct his primary business of farming his orchard. As the trial court correctly observed, the tractor stolen from Thunen was not an easily replaced commodity like a common make of an automobile. The stolen tractor was of the right size to work an orchard and had specialized parts that required they be ordered a year in advance. And because it lacked computer emission controls, the stolen tractor was more reliable than tractors with them. According to Thunen, this feature could no longer be found in new tractors.

During cross-examination, Thunen testified about the tractor: "It's the last of its kind. I was never going to get rid of it. It had a metal hood." Defense counsel then asked Thunen if there was any way for him to know what the tractor's value was. Thunen replied, "To me it was invaluable." The trial court replied, "You also told us it was $42,000." Thunen responded, "Roughly, yeah. That's basically what I would sell it for at the time, yeah."

6

It was not an abuse of discretion for the trial court to infer from Thunen's answer that his $42,000 value for the replacement cost was derived from what a farmer who had a tractor like his would sell it for at the time it was stolen. Given that Thunen could not find an exact replacement, the court could reasonably infer that the market supply for a tractor like Thunen's was low and the market price would be what a willing seller would establish. Thunen's testimony established that price.

We also reject defendant's contention that the offers of replacement tractors and the settlement from the insurance company carried his burden of overcoming the value set by Thunen's testimony. Thunen testified that the two tractors offered by the insurance company as replacements were not suitable as they were meant to work on a dairy farm rather than the orchard on which his tractor was used. He accepted $33,000 from the insurance company, not because this reflected the value of his tractor, but because, having spent 40 hours negotiating with his insurer, Thunen accepted the amount offered, even though he was not satisfied with the result. The trial court was within its discretion to reject these amounts and base the restitution on the valuation offered by Thunen.

Further, it was within the trial court's proper exercise of its discretion to reject the full $89,000 cost of the tractor purchased by Thunen as a proper amount for the restitution order. The court's justification for this ruling, that Thunen retained this tractor, and giving him the full price of it would be a windfall, is a reasonable inference to draw from the evidence. It is not arbitrary or capricious or a mistake of law to determine that the replacement cost of the 12-year-old stolen tractor is the amount provided by the victim rather than the purchase price of the new one he bought to replace it.

**DISPOSITION**

The judgment is affirmed.

/s/
_____
MURRAY, J.

We concur:


/s/
_____
HULL, Acting P. J.


/s/
_____
DUARTE, J.