Filed 8/15/24  P. v. Beard CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KENDRA CHANNEL BEARD,<br><br>    Defendant and Appellant. | B331653<br><br>Los Angeles County<br>Super. Ct. No. TA156406-01 |

APPEAL from an order of the Superior Court of Los Angeles County, Allen J. Webster, Judge.  Affirmed as modified.

S.R. Balash, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, William H. Shin and Lindsay Boyd, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Kendra Channel Beard was charged with three counts of assault by means of force likely to produce great bodily injury in violation of Penal Code section 245, subdivision (a)(4).[1] Each count named a separate victim: Brigette C. (count one), Jonah C. (count two), and Ashley N. (count three). The alleged date of the offenses was November 14, 2021.

On April 1, 2022, Beard pleaded no contest to count one in return for a negotiated sentence and dismissal of the remaining counts. In exchange for her plea and her agreement to pay restitution as to all three counts for all three victims, Beard was sentenced to two years of formal probation with specified conditions.

The incident occurred when Ashley N. told Beard she was too drunk to drive with children in her car. Beard became irate and tried to run over the victims with her car. The car ran over Brigette's legs. Brigette was dragged 20 feet by the car. All the victims suffered cuts, bruises, and lacerations and were taken to the hospital.

A hearing to determine the amount of restitution was held on May 5, 2023. The trial court awarded $16,540.46 to Brigette C. (count one) and $5,430 to Ashley N. (count three).

The evidence in support of the award of $16,540.46 to Brigette C. was a letter from Lincoln Financial Group that paid Brigette C. short-term disability benefits beginning November 29, 2021, 15 days after the assault involving Beard. The People calculated the amount due as $14,361.59, the 40 percent of Brigette's salary not covered by her disability insurance. The People also presented receipts for medical insurance Brigette bought after she lost her job. That amount came to $2,178.87 for

---

[1]     All further statutory references are to the Penal Code.

a grand total of $16,540.46. The record does not indicate why Brigette lost her job. Brigette did not testify at the hearing. The trial court adopted the requested amount of $16,540.46 and ordered Beard to pay that amount in restitution to Brigette.

As for Ashley N., she testified she was wearing a $3,200 necklace and an $800 pair of shoes when she was "drug 30 feet by a car." When she was taken to the hospital, the necklace was not on her neck. Ashley could not explain the loss other than she was wearing the necklace and she hasn't seen it since. Nor did the security guards see it on the hospital grounds when she asked them about it the next day. Ashley testified "I" paid $3,000 for the diamond charm and $200 for the chain. When the trial court asked her how long she had the necklace, Ashley testified her "fiancé bought it before he died, so maybe like a year. I got it for Christmas." She stated she wanted it back because "[i]t had sentimental value. Like I said, my fiancé died and it was a gift."

As to the shoes, Ashley also testified she was wearing $800 shoes that day and after the assault the shoes were completely ruined and one was missing. She had purchased them to wear to her deceased fiancé's September 25, 2021 funeral and she was wearing them for only the second time when she was assaulted. Ashley also testified that her son's glasses were lost and her two cell phones were broken during the assault. She claimed loss of earnings totaling $960, calculated at $320 a day at $40 an hour. She works as an executive staffing coordinator for a concierge nursing company. The trial court awarded Ashley N. a total of $5,430.

Beard objected to restitution for Ashley's diamond necklace, Ashley's shoes, and Brigette's medical insurance payments and the portion of her salary not covered by her disability insurance.

3

Beard argued that Brigette's loss of earnings and job loss were not connected to the assault. Beard also contended that Ashley's valuation of the necklace was suspect because she also testified it was a gift from her fiancé.

In responding to Beard's objections, the trial court stated: "If you wanted to, you basically could have, I guess, gone to a[n] appraiser with respect to the diamond necklace and charm and get [an] estimate as to what the value of some of these things are. Same with these shoes like anything else. And it's here. And if you wanted to, you could have basically subpoenaed the information to see if it's true or false. [¶] But I mean, the bottom line is, all this happened to these ladies. And apparently they happened to these lady because of your client. So all of this stuff is missing and we don't know why it was missing or wasn't missing. But one thing it seems to suggest that, had this incident not occurred, your client wouldn't be . . . in this court and these items wouldn't have been missing. [¶] So I just think you got to take the victim as you find them. And she had all these things on. And she seems to be very explicit about, you know, how much was lost. And it's tragic. This whole thing is tragic. But, you know, it is what it is. [¶] And so the court believes that they're not catty and they're not trying to get a lot money out of this case. They're just trying to be made whole. [¶] The court understands and accepts your objections for the record, I guess it is. But that's basically the court's finding, okay."

This appeal followed.

4

## DISCUSSION

A.    *Applicable Law*

Section 1202.4, subdivision (f) provides as follows: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." A defendant has the right to a restitution hearing where the standard of proof is preponderance of the evidence. (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1319.) Section 1202.4 does not, by its terms, require any particular kind of proof. Indeed, a victim's uncorroborated statement of loss and the value of the loss is acceptable proof. (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543; *People v. Prosser* (2007) 157 Cal.App.4th 682, 686, 690.) Once a victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of loss claimed by the victim. The defendant has the burden of rebutting the victim's statement of loss, and to do so, may submit evidence to prove the amount claimed exceeds the repair or replacement cost of damaged or stolen property. (*People v. Fulton* (2003) 109 Cal.App.4th 876, 886.) "The purpose of an order for victim restitution is threefold, to rehabilitate the defendant, deter future delinquent behavior, and make the victim whole by compensating him for his economic losses. . . . [¶] The order is not, however, intended to provide the victim with a windfall." (*In re Anthony M.* (2007) 156 Cal.App.4th 1010, 1017.)

An order of restitution is reviewed for abuse of discretion and will not be reversed unless it is arbitrary or capricious.

5

(*People v. Shelly* (2022) 81 Cal.App.5th 181, 199.) No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered. " 'When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination.' " (*People v. Superior Court (Jones)* (1998) 18 Cal.4th 667, 681.) We do not reweigh or reinterpret the evidence; rather, we determine whether this is sufficient evidence to support the inference drawn by the trier of fact. (*People v. Gemelli, supra*, 161 Cal.App.4th at pp. 1545–1546.)

B.    *Analysis*

Beard argues that Brigette did not establish that she lost her job or became disabled as a result of the assault, thereby failing to show that her losses were linked to the assault. The letter from Lincoln Financial did not state the cause or type of disability. There was no evidence as to why she lost her job, which forced her to purchase her own medical insurance. Beard contends Brigette's entire restitution award is not supported by substantial evidence.

We conclude that the trial court reasonably inferred that Brigette's absence from work was due to the injuries she sustained during the assault where she was dragged by a car for 20 feet after her legs were run over. The letter confirming her disability payments was issued 15 days after the assault. The letter from Lincoln Financial Group, coupled with the timing of the letter, is a rational, factual and sufficient basis supporting the award.

6

We agree with Beard, however, as to the lack of evidence of a connection between Brigette's job loss and the assault. There are a myriad of reasons why a person becomes unemployed and we are not willing to choose one from the paucity of evidence in the record. Her job loss may or may not have been due to her injuries and absence from work. We decline to speculate. We conclude the evidence is insufficient to attribute the economic damages resulting from her job loss to the assault. In that regard, we vacate the award of $2,178.87 attributed to the purchase of medical insurance after Brigette's job loss.

As to Ashley's diamond necklace, Beard argues Ashley's contradictory testimony (she purchased it for $3,200 and her deceased fiancé gave it to her as a gift) was false in that both of her statements could not be true. Beard contends $3,200 should not have been awarded to Ashley for the loss of the necklace.

We do not find Ashley's testimony necessarily contradictory. She was asked to state a value for the diamond necklace. No one has disputed that she owned and wore a diamond necklace when she was assaulted and that the necklace disappeared from her neck immediately after the assault. Whether she purchased it herself or her fiancé gave it to her is immaterial. If it was a gift to her it was still worth $3,200. The necklace was lost as a result of the assault and the value she ascribed to it was undisputed. As to Ashley's shoes, the court closely questioned her about the condition of her shoes, heard the testimony, and found it credible. We will not reweigh the trial court's assessment of her testimony.

Finally, Beard argues in her reply brief that she attempted to call Brigette to the stand and was cut off by the trial court. We do not read the transcript that way. Beard, through counsel,

never told the court she wanted and intended to proceed with an examination of Brigette.  More important, we do not consider new arguments made by a party for the first time in a reply brief. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 158.)

## DISPOSITION

The order for restitution is reduced by $2,178.87 only and is otherwise affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

STRATTON, P. J.

We concur:

GRIMES, J.

VIRAMONTES, J.