Filed 10/24/25  P. v. Russell CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　v.<br><br>YEAYO ALTANAE RUSSELL,<br><br>　　　Defendant and Appellant. | B336246<br><br>(Los Angeles County<br>Super. Ct. No. MA082075) |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa Strassner, Judge.  Affirmed.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief

Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Wyatt E. Bloomfield and Charles Chung, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * *

Yeayo Altanae Russell (defendant) appeals the portion of a restitution award ordering her to repay her victims for their out-of-pocket costs of hiring attorneys to track defendant down and to assist the victims in exercising their victims' rights. We conclude there was no error, and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts

On September 27, 2021, Iran Luna Herrera (Herrera) was driving in a Target parking lot with her mother and her young daughter as passengers.

Another car crashed into Herrera's car. When Herrera got out of her car to get the other driver's insurance information and to photograph the other car's license plate, the driver started yelling at Herrera. Defendant, who was a passenger in the other car, exited the car, walked up to Herrera, punched her in the face, and wrapped her hands around Herrera's neck to strangle her—all the while yelling, "I'll fuck you up so easily. I'll fucking kill you, you dumb bitch. I promise I'll kill you. I can beat your ass so easily."

When Herrera's mother exited the car to help Herrera, the other car's driver got out, struck the mother in the head, and held her body back while defendant continued her attack on Herrera.

Defendant and the driver eventually got back into the other car and drove off without identifying themselves.

2

## II.    Procedural Background

### A.    *Charges*

In the operative first amended information filed in March 2022, the People charged defendant with (1) felony battery causing serious bodily injury (Pen. Code, § 243, subd. (d)),[1] (2) felony assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)), and (3) misdemeanor hit and run driving resulting in property damage (Veh. Code, § 20002, subd. (a).)

### B.    *Plea*

After nearly a dozen court hearings, defendant entered a negotiated plea on February 14, 2023.  In exchange for the People's dismissal of the felony assault and misdemeanor hit and run charges, defendant pled no contest to the felony battery charge and admitted to personally inflicting great bodily injury (§ 12022.7), which rendered the crime a "strike" within our state's Three Strikes Law.  Defendant also agreed to pay restitution, including on the dismissed counts.  Also pursuant to the plea agreement, the trial court imposed a sentence of two years of formal probation, imposed a jail term of 1,008 days (which amounted to "time served"), required defendant to attend anger management classes, and ordered defendant to pay "any restitution . . . as a result of your actions on that day."

### C.    *Restitution hearing*

The trial court held a formal restitution hearing on December 15, 2023.  Defendant stipulated to pay $12,929.43 for Herrera's medical expenses and $12,637.21 for the medical expenses of Herrera's mother.

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

3

Through Herrera's testimony and supporting documentation, Herrera and her mother sought three other categories of restitution:

-- *Lost wages.* Herrera sought $1,111.50 in lost wages for the eight days that she spent attending court hearings for defendant, at her hourly wage of $19 per hour.

-- *Flat fee for attorneys who tracked down defendant.* Herrera and her mother retained the Kistler law firm to "investigate the driver [and] the vehicle" that struck them in the parking lot, to assess "whether they had any insurance," and to file an insurance claim on their behalf. The Kistler firm obtained a $10,000 settlement each for Herrera and her mother from the insurance company. The Kistler firm charged Herrera and her mother a flat fee of $5,000 each for its services.

-- *Flat fee for attorney who helped Herrera attend and understand all of the criminal proceedings against defendant.* Because Herrera felt like she "wasn't being heard" by the prosecutor, she hired attorney James Lochead to help her assert her rights as a victim. Lochead or his assistant attended court proceedings with Herrera on approximately a dozen occasions, explained the proceedings to her (by translating the legal jargon into understandable English), spoke to the prosecutor on her behalf, and called her with updates on the proceedings. Lochead charged Herrera a flat fee of $5,000 for his services.

The trial court awarded all three additional categories of restitution. As pertinent to this appeal, the court found that the services of the Kistler firm and Lochead were each "reasonably related to the defendant's criminal conduct" and that the flat fee charged by each was "not unreasonable" and "not unconscionable."

4

**D.** *Appeal*

Defendant filed this timely appeal.

## DISCUSSION

Defendant challenges two aspects of the restitution award. First, she challenges the *amount* of each award of attorney fees on the ground that such awards must always be calculated using the lodestar method (and hence no "flat fee" may be awarded). Second, she challenges the award of *any* fees for Lochead's services, regardless of how those fees are calculated.[2]

## I.    **Restitution, Generally**

In California, crime victims have a constitutional right to seek restitution for "the losses they suffer" from the defendant who inflicted those losses. (Cal. Const., art. I, § 28, subd. (b)(13); *People v. Martinez* (2017) 2 Cal.5th 1093, 1100 (*Martinez*).) To effectuate this right, courts must order that "the defendant make restitution to the victim or victims" "in every case in which a victim has suffered economic loss *as a result of the defendant's conduct.*" (§ 1202.4, subd. (f), italics added; see *id.*, subd. (f)(3)(B), (E), (H); *Martinez*, at pp. 1100-1101; *People v. Giordano* (2007) 42 Cal.4th 644, 655-656 (*Giordano*).) As pertinent here, economic loss includes "[a]ctual and reasonable attorney's fees and other costs of collection accrued by a private entity on behalf of the victim." (§ 1202.4, subd. (f)(3)(H).) To be recoverable, attorney fees must be "proper, necessary, and a logical result of [the

---

2    The People assert that defendant has forfeited this claim for failure to object below. Defendant's failure to object did not result in forfeiture of the issue because the claim arguably falls within the "'unauthorized sentence'" exception to the general rule that failure to raise an issue in the trial court results in forfeiture of the issue on appeal. (See *People v. Slattery* (2008) 167 Cal.App.4th 1091, 1094-1095.)

5

defendant's] criminal conduct" (*People v. Lyon* (1996) 49 Cal.App.4th 1521, 1525 (*Lyon*)) and must not be incurred solely to obtain *non-economic* losses (*People v. Fulton* (2003) 109 Cal.App.4th 876, 884-885 (*Fulton*)).  (Accord, *People v. Maheshwari* (2003) 107 Cal.App.4th 1406, 1408-1410 (*Maheshwari*) [attorneys hired to investigate defendant's conduct for a civil case, when that conduct underlies the criminal prosecution; fees recoverable in restitution]; *People v. Kelly* (2020) 59 Cal.App.5th 1172, 1180 [attorney hired to protect victim from defendant's criminal conduct in violating a protective order; fees recoverable in restitution]; cf. *Lyon*, at pp. 1524-1526 [attorneys hired to oppose defendant's requests for discovery in criminal case; fees not recoverable in restitution].)  A victim's right to restitution is "'"to be broadly and liberally construed."'"  (*People v. Moore* (2009) 177 Cal.App.4th 1229, 1231.)

## II.     Analysis

We review a trial court's restitution award for an abuse of discretion (*Giordano*, *supra*, 42 Cal.4th at p. 663; *People v. Carbajal* (1995) 10 Cal.4th 1114, 1121 (*Carbajal*)), recognizing that a trial court abuses its discretion if it makes an error of law (*People v. Yates* (2018) 25 Cal.App.5th 474, 484-485).

### A.     *Method of calculating the amount of attorney fees*

The general rule is that restitution may be calculated using any "'"rational method that could reasonably be said to make the victim whole."'"  (*People v. Beaver* (2010) 186 Cal.App.4th 107, 129; *People v. Marrero* (2021) 60 Cal.App.5th 896, 906.)  What is more, once a victim makes a prima facie showing that she has incurred a compensable out-of-pocket loss, the burden shifts to the defendant to disprove the amount of that loss.  (*People v.*

6

*Taylor* (2011) 197 Cal.App.4th 757, 761, 764 (*Taylor*); *Fulton, supra*, 109 Cal.App.4th at p. 886.)

The trial court's award of the flat fees in this case was not error on the record before us. Herrera and her mother made a prima facie showing that they incurred out-of-pocket losses for paying the $5,000 flat fee to the Kistler firm and to Lochead. This shifted the burden to defendant to prove that this amount was unwarranted or unreasonable or unrelated to the fee incurred. But defendant did not introduce any evidence to suggest that the efforts of the Kistler firm or Lochead were not worth the $5,000 flat fee that they charged Herrera and her mother; the most defendant elicited on cross-examination of Herrera was that Herrera did not know how many hours Lochead spent on her case when he was not in court with her.

Citing *People v. Millard* (2009) 175 Cal.App.4th 7, defendant argues that any award of attorney fees as restitution must always be calculated on the basis of the "lodestar method"— that is, by multiplying the number of hours reasonably expended by the attorney by a reasonable fee rate. Several decisions disagree with *Millard* on this point. (See *People v. Grundfor* (2019) 39 Cal.App.5th 22, 30-31; *Taylor, supra*, 197 Cal.App.4th at pp. 761-764.) The debate in these cases, however, occurs in the course of deciding how to award fees based on a contingency fee arrangement; these cases do not speak to the different question of whether a restitution award based on a flat fee is appropriate where, as here, that fee was paid out of pocket and nothing suggests that the flat fee actually paid was unreasonable or unrelated to the work done.

B.      *Restitution for Lochead's services*

As noted above, a trial court may award as restitution

7

"[a]ctual and reasonable attorney's fees . . . accrued by a private entity on behalf of the victim" (§ 1202.4, subd. (f)(3)(H)) as long as those fees are "proper, necessary, and a logical result" of the defendant's criminal conduct. (*Lyon*, *supra*, 49 Cal.App.4th at p. 1525.) The fee award for Lochead's services satisfies this definition. Herrera actually incurred the $5,000 flat fee she paid to Lochead; she explained what Lochead did to earn that fee— namely, attended the many proceedings in this case, explained those proceedings to her in real time, spoke to the prosecutor, and kept her updated on the proceedings; and defendant did not introduce evidence indicating those services were worth less than the $5,000 Herrera paid. Because crime victims in California have a constitutional right "[t]o reasonable notice . . . and to reasonably confer with the prosecuting agency," "to be notified of and informed [of] any pretrial disposition of the case," to "reasonable notice of all public proceedings," to be "present at all such proceedings," and to "be heard . . . at any proceeding . . . [at] which a right of the victim is at issue" (Cal. Const., art. I, § 28, subd. (b)(6)-(8)), Lochead's services were incurred to secure Herrera's rights as a crime victim and incurred only because she was a victim of *defendant's* crimes against her.

Defendant resists this conclusion with what boil down to three arguments.

First, defendant argues that Lochead's fees were incurred for non-compensable, non-economic losses because Herrera freely acknowledged that she hired Lochead due to her "feelings of distress, dissatisfaction with [the] legal outcomes [being negotiated by the prosecutor], and a desire for vindication." Herrera's testimony in this regard, however, speaks chiefly to her *motive* for hiring Lochead. What matters is that Herrera

8

incurred an out-of-pocket, economic loss of $5,000 in paying Lochead his flat fee. And even if we treat Herrera's testimony as indicating that her retention of Lochead helped her address her mental distress, an out-of-pocket expense incurred to improve one's state of mind is still compensable. (See, e.g., § 1202.4, subd. (f)(3)(C) [costs for "[m]ental health counseling expenses" are recoverable].) Although, as noted above, attorney fees incurred *solely* to seek compensation for non-economic losses may not be awarded as restitution, Herrera hired Lochead also to assist her in participating in the criminal proceedings against defendant; Herrera did so, and as a result of that participation, obtained a restitution award.

Second, defendant argues that Herrera's need to hire Lochead was due to *the prosecutor's* decision to offer a plea bargain and attendant failure to keep Herrera in the loop, and that the prosecutor's actions and inattentiveness, respectively, constitutes a superseding and intervening cause that absolves defendant of any liability for Lochead's fees. Although the language used in the case law is not consistent (compare *People v. Foalima* (2015) 239 Cal.App.4th 1376, 1396-1397 [chiefly relying on "but for" causation] with *People v. Jones* (2010) 187 Cal.App.4th 418, 426-427 [chiefly relying on "proximate causation"]), that case law uniformly holds that the causal link between a defendant's conduct and a victim's losses for purposes of restitution is broken only when the intervening event is not foreseeable. (*Foalima*, at p. 1397; *Jones*, at p. 427.) That a prosecutor might offer a plea bargain (and that the defendant may seek a lower sentence than offered) or that the prosecutor may be spread too thin to be sufficiently attentive to keep all crime victims fully informed is not unforeseeable; to the contrary,

9

most criminal cases resolve with pleas and some private lawyers have entire practices aimed at assisting crime victims. Nor is it a response that the services of a victim's advocate attorney duplicate those of the prosecutor or other public employees; such costs may also be recovered as restitution. (*Maheshwari*, *supra*, 107 Cal.App.4th at pp. 1409-1410 [investigative fees incurred by lawyers recoverable as restitution even though a public agency was charged with investigating and did not fulfill that obligation].)

Third and lastly, defendant asserts that Herrera did not show that awarding restitution for Lochead's fees satisfies the test for a reasonable condition of probation. This argument fails for several reasons. To begin, the award of restitution under section 1202.4, subdivision (f) is *distinct* from an award of restitution as a condition of probation. (*Martinez, supra*, 2 Cal.5th at p. 1101; *Giordano*, *supra*, 42 Cal.4th at pp. 651-653.) Because we have found restitution proper under section 1202.4 and because restitution under this provision is *narrower* than restitution as a condition of probation, whether the conditions for a valid probation condition are met are irrelevant. Further, the test for a valid probation condition is easily satisfied. A condition of probation will be upheld as reasonable unless it "'"(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality."'" (*People v. Olguin* (2008) 45 Cal.4th 375, 379, quoting *People v. Lent* (1975) 15 Cal.3d 481, 486.) "The *Lent* test 'is conjunctive—*all three* prongs must be satisfied before a reviewing court will invalidate a probation term.'" (*In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118, italics added.) We need go no

further than the first prong here.  The fee paid to Lochead to enforce Herrera's constitutional rights has a direct relationship to the crime of which defendant was convicted.  This is no doubt why "[r]estitution has long been considered a valid condition of probation."  (*Carbajal*, *supra*, 10 Cal.4th at p. 1121.)

**DISPOSITION**

The restitution order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, P.J.
HOFFSTADT

I concur:

_____, J.
KUMAR\*

---

\*      Retired Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

The People v. Yeayo Russell
B336246


KIM (D.), J., Dissenting



I respectfully dissent. Although I would affirm the challenged portion of the restitution order that required defendant Yeayo Russell to pay Iran Luna Herrera $5,000 for attorney fees she paid to the Kistler firm, I would reverse the portion of the order that required her to pay $5,000 for fees paid to James Lochead.

At the restitution hearing, Herrera testified about the circumstances under which she hired Lochead. She explained that after she was contacted by "somebody from the court," she attended a court hearing and spoke to the assigned prosecutor. When the prosecutor advised Herrera that defendant "would only get behavior management classes," the victim disagreed with the terms of the proposed plea and the prosecutor responded, "'Okay. Then we're going to have to talk about this further.'" The prosecutor then advised the trial court about Herrera's objection and the court responded by continuing the scheduled hearing. Herrera explained that the prosecutor "didn't really talk to me after that because he had more cases." Later, however, the prosecutor telephoned Herrera and asked her "what exactly [she] wanted[.]" Herrera responded that the proposed plea was not fair. At the hearing, a prosecutor (a different one from the one who discussed defendant's plea) and Herrera then engaged in the following exchange:

"Q[:]  Okay.  So as a result of your court experiences with the [prosecution] and court personnel, did you feel like you needed—you wanted more help?

A[:]   Yes, ma'am.  I felt like I wasn't being heard.

Q[:]   Okay.  And is that the reason you hired Mr. Lochead?

A[:]   Yes."

Herrera further explained that Lochead and his assistant, who was not an attorney, provided the following services.  One or both were present when Herrera spoke to the prosecuting attorney.  They also provided Herrera with updates.  As Herrera testified, "[Lochead] would call me and let me know, 'Hey, I spoke to [the prosecutor].  He says there's no update.'  And [Herrera] would say, 'Okay.  Thank you.'"  Finally, Lochead or the assistant would explain the meaning of certain legal terms used during a hearing.  But neither Lochead nor his assistant helped Herrera fill out a request for restitution, prepared Herrera to testify at the restitution hearing, or advised Herrera about the restitution hearing date.  The record therefore does not support the majority's conclusion that Herrera obtained a restitution award "as a result of [Lochead's] participation."

To be recoverable, the economic loss must be "proper, necessary, and a logical result of [the defendant's] criminal conduct."  (*People v. Lyon* (1996) 49 Cal.App.4th 1521, 1525.)  A trial court "may only impose restitution for economic losses incurred 'as a result of' the defendant's criminal conduct. [Citation].  Put differently, restitution may be imposed in such cases only to the extent the defendant's criminal conduct played a 'substantial factor' in causing the victim's economic loss. [Citation.]  To be a substantial factor, the defendant's criminal conduct must be more than a 'trivial or remote' factor

2

contributing to the victim's loss, but it need not be the 'sole' cause of the loss." (*In re S.O.* (2018) 24 Cal.App.5th 1094, 1101.)

I disagree that defendant's criminal conduct was a "substantial factor" in the economic loss that Herrera sustained through her payment of attorney fees to Lochead. The majority notes that it is reasonably foreseeable that "a prosecutor might offer a plea bargain or may be spread too thin to be sufficiently attentive to keep all crime victims fully informed." Reasonable or not, that is not what happened here. Someone from the criminal justice system informed Herrera about defendant's court appearances and Herrera attended all but two of the nearly dozen hearing dates. Further, the assigned prosecutor advised Herrera about the terms of the proposed plea and, when Herrera objected, the prosecutor advised the trial court about the objection, resulting in a continued court date.

Further, the majority's observation that "investigative fees incurred by lawyers [are] recoverable as restitution" is inapt. Herrera did not retain Lochead's services to assist in the investigation and prosecution of this case. (*People v. Ortiz* (1997) 53 Cal.App.4th 791, 797.) Instead, Herrera hired Lochead because she objected to the parties' proposed plea agreement. Fees paid to a private lawyer who advocates for a higher sentence "may well be an 'economic loss'" but it is not a loss that results from defendant's criminal conduct. (*People v. Lyon, supra*, 49 Cal.App.4th at p. 1526.) Instead, it is a loss that results from defendant's efforts to negotiate a more favorable plea. (See *ibid.* [expense incurred by the victim in retaining private counsel to oppose discovery resulted "from defendant's defense of the criminal charges" rather than his criminal conduct and thus was not recoverable under Penal Code section 1202.4].)

3

Finally, Herrera also paid Lochead to explain "legalese" used by the court during court proceedings.  While it is reasonably foreseeable that a crime victim would not understand every word used during a court proceeding, it is not, at least at present, reasonably foreseeable that a victim would retain the services of an attorney to explain, in real time, any specific terms that she did not understand.  For these reasons, I would reverse the portion of the restitution order that represents Herrera's payment to Lochead.


KIM (D.), J.